UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DWIGHT HAUER,

               Plaintiff,

    v.

DEPARTMENT OF STATE
HOSPITALS-COALINGA,

               Defendant.

Case No.: 1:25-cv-01090-JLT-CDB (PC)

**ORDER RE PLAINTIFF'S FILINGS OF MAY 26, 2026**

(Docs. 13 & 14)

**ORDER CONSTRUING LETTER TO BE MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT**

**ORDER DIRECTING CLERK OF THE COURT TO STRIKE DOCKET ENTRY NUMBER 14**

Plaintiff Dwight Hauer is a civil detainee appearing pro se and *in forma pauperis* in this civil rights action.

**I.    RELEVANT BACKGROUND**

On May 8, 2026, the Court issued its Second Screening Order. (Doc. 12.) The Court determined Plaintiff had plausibly alleged a Fourteenth Amendment failure to protect claim against Defendant Serrano and a Fourteenth Amendment conditions of confinement claim against Defendant Ndifang but had failed to allege a cognizable claim against any other named defendant. (*Id*. at 5-10.) Plaintiff was directed to do one of the following within 21 days: (1) notify the Court that he did not wish to file a second amended complaint and was willing to proceed only on his Fourteenth Amendment claims against Defendants Serrano and Ndifang; (2) file a second

amended complaint curing the deficiencies identified in the screening order; or (3) file a notice of voluntary dismissal. (*Id*. at 11.)

On May 26, 2026, Plaintiff filed a 12-page letter addressed to the undersigned (Doc. 13) and "Plaintiff's Notice To the Court" (Doc. 14).

## II.    DISCUSSION

### *Plaintiff's Filings of May 26, 2026*

In the notice, Plaintiff states "he does not intend to file a 2nd Amended Complaint. He wishes to proceed forward with his 1st Amended Complaint with only two Defendants …." (Doc. 14.) Typically, upon receipt of such notice by a pro se plaintiff, the Court would issue findings and recommendations to dismiss certain claims and defendants, allowing for the action to proceed only on the claims found cognizable by the Court after screening. Here, however, the Court is hesitant to do so considering Plaintiff's letter.

In a letter filed the same date, Plaintiff states he is "relying on the legal expertise of a jailhouse paralegal" who Plaintiff reports was discouraged by the Court's "recent request for a second amended complaint." (Doc. 13 at 1.) Plaintiff states the jailhouse paralegal felt it was "too much bother" to file an amended complaint and instead "typed out Plaintiff's Notice To the Court …." (*Id*.) Next, Plaintiff states that he "intends to sign his document and return it to the court along with this letter for the court to take into consideration [his] layman's view, maybe enter it into the record, and or give [hjm] further [advice]." (*Id*.) Next, Plaintiff states his jailhouse paralegal "has not the time to even read" his letter. (*Id*.) Thereafter, Plaintiff explains he sustained a "birth injury" in 1949 "that involves facial recognition." (*Id*.) Essentially, Plaintiff is unable to accurately identify persons known to him, often not recognizing "the face of someone [he has] met" previously. (*Id*. at 1-2.) Plaintiff recounts two examples of his disability during incarceration: one at New Folsom State Prison and another at Pelican Bay State Prison. (*Id*. at 2.) He also recounts a tale involving a state politician "routinely interviewed" on a local radio program he often listened to as a young man and explains he recognized that individual's voice later in a public setting but would be unable to identify that individual's face even after meeting him in person. (*Id*. at 2-3.)

2

Next, Plaintiff asserts that at California State Hospital (CSH) in Coalinga "almost none of the staff purposely does not wear name tags as is required in all of the many outside hospitals and medical facilities" he has visited, and if asked their name, staff "often take offense and refuse to give it." (Doc. 13 at 3.) Plaintiff states that his "face recognition weakness is a disability that causes it to escape [his] memory, but names are unaffected." (*Id*.) When Plaintiff searches a name in his "journal it comes up more than two hundred times giving dates, times, and the details [without] having to jump through hoops to find out the names of staff." (*Id*.) Thereafter, Plaintiff provides dozens of "copied and pasted unedited" excerpts from his journal concerning "pertinent events." (*Id*. at 3-12.) Plaintiff alleges he has made "more than a half dozen complaints to Patients' Rights for the lack of nametags" and appealed to the executive director "all without much success." (*Id*. at 12.) He states he has "also made five nametag and name problem complaints in the last 17-months to the Office of Law Enforcement Support that they claims are being investigated," but has received no response. (*Id*.) Plaintiff asserts the incident giving rise to his claims in this action "caused an[] alarm that was responded to by more than fifty staff all potential witnesses that may have made useful reports for [him] that could be revealed by discovery." (*Id*.) All of those individuals' "new faces are unremarkable and thus unremembered," save for one. (*Id*.)

Plaintiff asserts it is his opinion that the "hospital is a criminal enterprise and was purposely designed to be run by a staff of odds & ends with peculiarities that forces them to take a job at the end of the road here in Coalinga." (Doc. 13 at 12.) He asserts the Court has to agree that his "arguments are supported by overwhelming evidence that describe the unfair limitations of this hospital" in light of his disability and that any belief the "hospital inadvertently forgot to pass out nametags" would be a mistake; rather, Plaintiff asserts "[i]t is nothing but malice of forethought designed to protect the identities of unknown defendants DOES 1 through 10 who may include supervisory staff, charge nurses, or other CSH employees who were personally involved in the failures" giving rise to his claims and that he can "only ascertain their names through discovery." (*Id.*) Plaintiff concludes his letter as follows: "I am aware that my desire to impose fairness and truth may be legally irrelevant. It may take hundreds more years before

3

another nine wiser than anyone else have a majority and finally realize that the covert staff here are slave masters that look for opportunity to become petty tyrants. I am looking forward to receiving your response." (*Id*.)

### *Analysis*

First, the Court will not construe Plaintiff's notice filed May 26, 2026, to be an election to proceed only on the claims found cognizable by the Court in its Second Screening Order. It is clear from Plaintiff's letter that he wishes to proceed on any claims he may have against the unknown or Doe defendants. As a result, the Court will direct the Clerk of the Court to strike the notice.

Second, the Court will construe Plaintiff's letter filed May 26, 2026, to be a motion seeking an extension of time within which to file a second amended complaint. The Court will grant Plaintiff an additional 60 days within which to file a second amended complaint curing the deficiencies identified in the screening order. Plaintiff is directed to pages 9 and 10 of the Second Screening Order wherein the Court indicates Plaintiff "may use 'Doe' designations to refer to defendants whose names are unknown" and explains how those individuals can be identified by number in any amended complaint along with a description of their involvement in any action to violate his civil rights.

Third, Plaintiff is advised that any witnesses to the events giving rise to his claims — versus individuals who acted or failed to act, resulting in a violation of his civil rights — do not need to be named in the second amended complaint.

Presuming Plaintiff then files a second amended complaint and properly identifies any Doe defendants by number and action or inaction, thus stating a cognizable claim against a Doe defendant, the Court will issue an order granting Plaintiff leave to conduct limited discovery to learn those individuals actual names.[1]

Next, as Plaintiff was previously advised, "Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint." (*See* Doc. 12 at 11.) Therefore, to

---

[1] Limited discovery is different than discovery that is conducted after the opposing parties have entered an appearance in the action.

4

the extent Plaintiff seeks to assert any claim concerning CSH staff's failure and/or refusal to wear nametags, such a claim appears to be new and unrelated to the Fourteenth Amendment failure to protect and conditions of confinement claims asserted originally involving the incident occurring on April 11, 2026. Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claims arise out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.3d 1371, 1375 (9th Cir. 1980).

Next, Plaintiff is encouraged to review the First Informational Order in Prisoner/Civil Detainee Civil Rights Case issued on August 28, 2025. (Doc. 3.) It provides valuable information regarding litigating a case in this Court.

To the extent Plaintiff seeks advice from the Court, as distinguished from the information provided herein, the Court does not provide legal advice and cannot advise Plaintiff on how to proceed. Should Plaintiff decide, based upon the information provided herein, that he does not wish to file a second amended complaint after all, Plaintiff may file a *new* notice, indicating, without qualification, that he wishes to proceed on the claims previously found cognizable by the Court, to wit: his Fourteenth Amendment failure to protect claim against Defendant Serrano and Fourteenth Amendment conditions of confinement claim against Defendant Ndifang.

Lastly, in the event Plaintiff requires more than 60 days within which to file a second amended complaint, considering the time limitations associated with the assistance provided by the "jailhouse paralegal" Plaintiff mentions in his letter, Plaintiff may seek a further extension of time. Any such extension request must be supported by good cause and should specifically address how drafting the second amended complaint is proceeding up to that point, how much more work is expected, and how long of an extension Plaintiff believes is necessary to complete the task.

//

5

### III.   CONCLUSION AND ORDER

Accordingly, for the reasons stated above, the Court **HEREBY ORDERS** that:

1.   The Clerk of the Court shall strike docket entry number 14 filed May 26, 2026;

2.   Plaintiff's letter filed May 26, 2026, is **CONSTRUED** to be a motion for an extension of time within which to file a second amended complaint. So construed, the motion is **GRANTED**;

3.   Plaintiff **SHALL** file any second amended complaint **no later than 60 days** from the date of service of this order.

**Any failure by Plaintiff to timely comply with this Order will result in a recommendation that this action be dismissed for Plaintiff's failure to state a claim, failure to obey court orders, and failure to prosecute**.

IT IS SO ORDERED.

Dated:   **May 29, 2026**   _____
                            UNITED STATES MAGISTRATE JUDGE

6